Good morning, Your Honors. My name is Michael Donahoe. I work for the Federal Defender's Office and was appointed by the court, the District Court, to represent Mr. Mendoza. We're here on three claims today, if you include the jurisdictional issues. I wanted to ask you a couple of questions. The substantive issue, the first substantive issue we bring is whether the race of the defendant or the status of the defendant under 1152 is actually an element that needs to be charged and proved by the United States beyond a reasonable doubt. We've got a case in point that says no. You do. And I recognize that, Your Honor, that the Hester case says that. I don't think that the related case of Bruce that was just decided by the court alters that situation at all. I just submitted on the paper based on the contrary ruling in Prentiss. Where I really wanted to spend my time this morning was on the confession claim. First, I think I want to ---- Moot, isn't it? Pardon me, Your Honor? The whole argument about in light of the stipulation that took place after the district court's ruling and stipulated the elements of the offense, the whole pretrial rulings by the district court are removed. Well, the stipulation I don't think provides for that. It says precisely that a reasonable jury under the circumstances could find on the evidence that would be submitted to the district court guilty under reasonable doubt. What more was necessary? Well, if that's the problem, I'm ineffective and the case should be sent back down so I can withdraw and he can have new counsel appointed. Because I did not recognize, nor did the government, that that was the case. How do we know that? Was there a hearing on that? Well ---- Are you just avowing this or what? I'm just avowing this now. There was no hearing. I asked for the hearing so that I could do that. I would have done that in light of Larson had we known that. This was a procedure with this particular district judge with which I was not familiar. But government counsel was, had used it in the past. If you're right, shouldn't we just send it back and have the district judge decide whether Mr. Mendoza went into this with his eyes open or not? I'm fine with that. But if that's the case, I think Judge Haddon could be persuaded. I hate to have to come back again on the issue of the confession. That's clearly before the Court. The motions were brought. Judge Haddon analyzed it, made that determination. If it goes back down, I would suggest respectfully, please urge that there be something in the papers that go back down indicating that that, this business about the polygraph should be admissible at any subsequent trial. Why would we do that before the district judge had a chance to rule on it? Well, I understand that that might be in the nature of some kind of declaratory relief, but I guess I'm suggesting that I couldn't conceive of how Judge Haddon would not let this man have his jury trial right based on the conditions I think that the government will agree with here. They were the circumstances. I'm not sure the government will. We'll get to that later. I'm having difficulty knowing what issue I'm dealing with. You indicate now, if I understand you correctly, that the issue you want us to take back down the district court is to determine whether whatever happened with the polygraph was sufficient that it interfered with the free will of your client when he decided to waive jury and go through a slow plea. Is that correct? No. All right. I apologize for any confusion. No, you didn't state your issues in your blue brief, which is required under our rules. And frequently we won't even hear your issue. We're being very generous. But you really should follow the rules of our court and state your issues in your opening brief, which you failed to do. So why don't you correct that now to tell me specifically what is the issue that you want to put before us?  However, insofar as the confession and the polygraph is concerned, the endeavor here is to convince the court that the defendant was denied his rights under Crane v. Kentucky to put before the jury all of the attendant circumstances associated with that confession, to include and not limited to the administration of the polygraph some half a dozen times, the inconsistencies in the reports that came out on those statements and post-trial confessions, all of that material, all of that evidence we wanted to put before the jury in this case at the jury trial. Okay. Well, I have the same question, Judge Paez. If that's your issue, it seems to me that that's pretty well moot now. I thought the issue you were raising is whether or not there was a voluntariness in making a decision. He'd waive jury and take a slow plea. I could see that argument, but you better get back to Judge Paez's issue then to convince at least two-thirds of the court that that isn't waived under the circumstance of this case. Well, if that's where we are, I mean, that's where I'll be. I'm not going to contest that. If the court thinks that the larceny decision means that this was a slow plea and that argument was waived, then that's a problem. We asked for a hearing on that before we came up here. That hearing was denied, apparently based on the government's concession that larceny didn't apply to the situation and that we were okay being here. If that's not the case, I would respectfully request that we go back down so that Judge Haddon can make a first-line determination whether or not Mr. Mendoza properly waived his jury trial right. Well, wait a minute now. I thought the only issue you were raising before us was whether or not it should go back down and have a trial in which all of the evidence would come in pertaining to a polygraph. That's what we want. And you specifically said you were not raising the issue of the voluntariness of the waiver of the jury in the slow plea. No. No, it's raised in the brief. I brought it forward because I was concerned about it. You didn't state it in your issues. I thought, no, it's raised in the jurisdictional section because we were concerned about it. But based on the way the case worked up, Your Honor, and the government's agreement that larceny does not apply, we went on and briefed the substantive issues. That's where we are. It looks as though the parties, neither the government nor you or the district court was aware of the potential pitfalls of this type of stipulation. Yes, Your Honor. The larceny came down. I think it was out at the time. But for some reason or other, counsel nor the district court were aware of it. And so the stipulation here is not a stipulation of what the evidence would be if a certain witness were called. Correct. Or what documents or what you would offer. It was a stipulation of fact. Correct. Basically. And that moves all the pretrial rulings. I mean, you just stipulate. What you did was you stipulated the elements of the offense. Well, and if that's what we did. Well, that's what you did. Then I take responsibility for that. But I don't want to compromise Mr. Mendoza's jury trial right based on my inadequacy. By doing that, he didn't understand. It's pretty clear from the record that he didn't understand that by doing this, that he was giving up his right to pursue that issue. Correct. And the government seems to acknowledge that. And Judge Wallace says, you know, we should go back to the district court and the district court should do this thing all over again. Right. And that's where we are. So I guess there's nothing further to argue. Thank you. Thank you. Mr. Donahoe. I'm a little concerned. I don't see anything in your reply brief of what your issues are. The red brief says the issue is whether the district court abused its discretion by refusing to admit polygraph evidence, which was the position you started off with. So I guess my real question is, under the rules that guide us and hopefully guide attorneys, what's the issue that we're going to look at in the court of appeals? On page 16 of my brief, Your Honor, it says, Appellant, in capital letters, Okay. Now, that's the evidence that you had before. That's the issue insofar as the polygraph test is concerned. Yeah. But that's not an issue that whether or not his waiver of a jury and slow plea were    No. No. Okay. No. They are different things, and the slow plea, as you characterized it, I don't know that I used that phrase in the briefing, was brought forward in the jurisdictional statement. All right. I thought that was the appropriate way to do that. Thank you very much. Thank you. We've got half a minute for rebuttal. Ms. Searff. Thank you, Your Honor. My name is Lori Searff. I'm an assistant U.S. attorney in the District of Montana from Great Falls, and I was trial counsel in this case. And the court obviously is concerned about the Larson case. That is Mr. Donahoe is correct. That was a case that neither the district court nor Mr. Donahoe, or most importantly the government, was aware of when we agreed to do a stipulated fax bench trial. And there was a motion by the defendant when we became aware of Larson to the district court. And the government, as you've seen in my brief, as well as in the district court, tried to save the procedure. It's a weak save, as I've candidly admitted. I'm trying to draw a narrow distinction in order for the court to get to the heart of this issue. But in light of your comments today, I can't really sidestep it too much. The bottom line is we did stipulate to the fax. We did so because we were unaware of Larson. It was a procedure that we used, and it was just something that none of us knew created a problem. Ms. Searff, while we're at it, this is Silverman. What was this guy sentenced to? I read his judgment three times. I can't figure out what his sentence is. His sentence right now is 210 months. That's my understanding of what it is, Your Honor. The sentence was amended after the Ammaline decision in order to take away any sentencing enhancements. I'm looking at the judgment filed July 26, 2004. And let me look at the excerpt of record, Your Honor. I have that in front of me. It's at 587. Okay, that's in Volume 3, I believe. At one place, it looks like he's sentenced to 210 months. At another place, it looks like 262 months. At another place, it looks like 270 months. Let me give you my understanding of what the district court did here. The 210-month sentence was the third sentence imposed after Ammaline. At the time of sentencing, the judge gave a guideline sentence of 262 months. And then an alternate statutory sentence of 270 months that would, by the court's statements, come into effect if the guidelines were held unconstitutional in some way. And then Ammaline came down within seven days after the sentencing. And because there had been an enhancement that was just not allowed, the court amended it in accordance with Ammaline down to 210 months. And so the 262-month sentence, in my view, is not operative anymore. It's 210 months under the guidelines comporting with Ammaline and 270 months as a statutory sentence. I have no idea what that is. Well, it's – I understand. But that's the – excuse me. No, go ahead. Oh, I'm sorry. I thought I heard a question. But that's the situation that we have in the case. Getting back to the issues here, the issues that the United States – if issues are one that we want to clear up, the issues in the United States that we believe were raised were two jurisdictional issues on the basis of Larson and on the basis of whether an alternative sentence program is a final judgment, and those are addressed. And then the other issues were the elements issue, I will call it, that foreclosed by Hester and also although the recent United States v. Bruce case found that 394F3-1215 is not on point, as Mr. Donahoe has acknowledged. It does have a statement at pages 12, 22 discussing Hester. So the other substantive issue remaining is whether there should have been more of an ability for the defendant to bring up the factual voluntariness of his confession at the trial. The United States does not agree that the defendant was foreclosed from bringing up anything about that factual voluntariness under Crane v. Kentucky. We would refer the court to the excerpts of records, pages 347 through 384, which was the direct examination and extensive cross-examination of Special Agent Matt Solosinski, regarding in large part, if not in whole, the circumstances surrounding the taking of the confession. This is Judge Wallace. I have a couple of questions. Number one, at page 30 of your brief, you said the exclusion was based upon Rule 403, that any probative value was outweighed by its prejudicial effect. But there's no citation to the record in your brief, which is usually what we require. Do you have a citation for us? I can look at it right in the excerpt of record, Your Honor. All right. It is. Yeah. Would you like me to look for that? No, that's all right. Let me ask you another question. At page 33, the government admits that the results of the polygraph are often used to compel the guilty to confess. Then it says there was no unfair psychological skullduggery. But isn't that a question of fact that the judge has to determine? He did, Your Honor, yes. And you say he did? Yes. He made a specific finding that he made a statement that the polygraph is often used to compel the guilty to confess, and then made a finding that there was no unfair psychological skullduggery? No, he didn't use those words specifically, Your Honor. But in the suppression hearing, he found that there was no psychological coercion. I think he did use the words that the will of the defendant was not overborne, which is exactly what we deal with in these cases of a claim of psychological coercion. Did he make a finding the polygraph is often used to compel the guilty to confess? No, Your Honor. I don't understand where you got that from your brief. Well, this is in the argument section of the brief, and that is just known fact that we use polygraph as an investigative technique. That was a follow-through, sort of a segue of the brief in terms of what we use polygraph for. I'm not stating that as a finding of the district court. It's argument. Well, usually in briefs we get a rendition of what happened in court rather than what counsel thinks happens generally. And that's why I was raising the question. Finally, at page 34, it says that the defendant was not prohibited from discussing the circumstances surrounding his confession, only the specifics of the polygraph examination. There was no citation. Was that something that happened in the trial or in the suppression? Yes, Your Honor. That's what I just referenced. Excerpts of record 347 through 384, and that was in the trial. All right. It wasn't in your brief, but that's where we find it, right? Yes. Okay. The final question I have is how come the government doesn't have any money for travel but the defender organization does? I think that my husband has had a lot of effect on that, Your Honor, because I used to spend too much money at Nordstrom. Okay. But not being funny, I don't know. We just try and save money on our budget. We'll have to get you more money. Thank you. Judge Plains? Judge Wallace, anything else? Thank you, Ms. Wick. Thank you. Mr. Donahoe, you had about 30 seconds left. Okay. Thank you. Both counsel, the matter just argued is submitted. We'll stand at recess for the day. All other cases that were to be submitted on the briefs are submitted. Thank you. Good morning. All rise. This court for this session stands adjourned. Lori, are you still online?
judges: Wallace, Silverman, Paez